**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PH HEALTH LIMITED,<br>Plaintiff,<br>-against-<br>RK PHARMA, INC.,<br>Defendant. | Case No. 26-4659<br>**COMPLAINT**<br>Jury Trial Demanded |

Plaintiff PH Health Limited ("Par Health"), by its attorneys, for its complaint against Defendant RK Pharma, Inc. ("RK Pharma"), alleges on knowledge as to its own actions, and otherwise on information and belief, as follows:

## PRELIMINARY STATEMENT

1. This is an action for breach of contract and related relief arising out of RK Pharma's delivery of defective Ferric Citrate active pharmaceutical ingredient ("API") that failed to conform to the required Specifications and warranties under the parties' Co-Development, License and Supply Agreement dated January 31, 2022 (the "Agreement"). As set forth below, the RK Parties (defined herein) acknowledged in writing that the third validation batch was "exceeding . . . [the] unknown impurity specification of 0.05%" in stability, identified the impurity as methyl citrate, confirmed the existence of a Corrective and Preventive Action ("CAPA") to control the impurity, admitted that "[r]eprocessing of the 3rd batch is not possible," and refused to manufacture three fresh validation batches to cure the nonconformity.

2. Pursuant to Sections 5.5.1, 5.5.3, and 5.5.4 of the Agreement, Par Health rightfully rejected the defective API delivered under Purchase Order 4500054569 and demanded

cancellation of that purchase order and repayment of US$461,442.58, which Par Health had previously paid as consideration therefor.

3. In addition, pursuant to Section 13.2.6 of the Agreement, Par Health provided due and rightful notice of termination of the Agreement, effective ninety (90) days from November 21, 2025. In the alternative, Par Health was also entitled to terminate under Section 5.6.1(iii), which permits termination where API is properly rejected under Section 5.5 and not replaced within ninety (90) days after delivery of the Rejection Notice.

4. Despite due demand, RK Pharma has not repaid the US$461,442.58. Par Health seeks damages, declaratory relief, prejudgment interest, costs, and such other relief as the Court deems just and proper.

## PARTIES

5. Par Health is a private limited liability company organized under the laws of Ireland with its principal place of business at First Floor, Minerva House, Simmonscourt Road, Ballsbridge, Dublin 4 D04 H9P8, Ireland and is the successor-in-interest to Endo Ventures Limited ("EVL") under the Agreement. Par Health is the real party in interest as assignee and successor to the beneficial rights, claims, causes of action, and obligations under the Agreement, as alleged below.

6. RK Pharma, Inc. is a Delaware corporation with its principal place of business located at Building 215/215A, 401 North Middletown Road, Pearl River, New York 10965.

## JURISDICTION

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

## VENUE

8. Venue is proper in this District because the Agreement is governed by New York law and contains an exclusive New York forum selection clause designating state and federal courts located in the State, City, and County of New York for disputes arising out of or in connection with the Agreement, and because RK Pharma consented to jurisdiction and venue in New York.

9. Venue is also proper under 28 U.S.C. § 1391(b) because RK Pharma resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS

### A. The Agreement

10. On January 31, 2022, EVL entered into the Agreement (attached as **Exhibit 1**) with RK Pharma and Apicore Pharmaceuticals Pvt. Ltd. ("Apicore" and, together with RK Pharma, the "RK Parties"). EVL was the original "Endo" party to the Agreement.

11. The Agreement governs the co-development, licensing, and supply of the API, Ferric Citrate, for the United States market. The API is the active pharmaceutical ingredient in Ferric Citrate 210 mg tablets, a product therapeutically equivalent to the Reference Listed Drug, AURYXIA® 210 mg tablets, NDA #205874, which the Agreement defines as being "owned by Keryx Biopharms."

12. Under the Agreement, the RK Parties were responsible for manufacturing the API in accordance with the Specifications and delivering conforming API to EVL (and its successors) pursuant to firm purchase orders.

13. The Agreement's assignment clause (Section 15.4) permits assignment to an Affiliate and in connection with a merger, acquisition, or sale of all or substantially all assets, and binds successors and permitted assigns.

14. The obligations of each of the RK Parties under the Agreement are joint and several, regardless of whether a particular provision refers to one or both of the RK Parties. Agreement, Section 15.16.

**B. Chain of Title and Assignment**

15. Effective May 31, 2023, EVL transferred the Agreement to Operand Pharmaceuticals III Limited, an Affiliate of EVL within the Endo group. Such transfer was a permitted assignment under Section 15.4 of the Agreement because it was an assignment to an Affiliate. Operand Pharmaceuticals III Limited later changed its name to Endo Operations Limited ("EOL") on January 25, 2024.

16. On July 1, 2025 (the "Completion" date), EOL transferred its generics/sterile injectables business to Par Health pursuant to a Business Transfer Agreement. The Business Transfer Agreement expressly transferred and assigned the "Third-Party Contract Interests" in the Agreement (including all rights, benefits, claims, and causes of action, accrued and after-accruing, and the burden of obligations and liabilities) to Par Health. Such transfer constituted a permitted assignment under Section 15.4 of the Agreement because it was made in connection with a sale of all or substantially all of EOL's assets in the relevant business line.

17. From Completion, Par Health has held the full beneficial interest in the Agreement and related claims.

18. Par Health is the real party in interest because, as of July 1, 2025, it holds the full beneficial interest in the Agreement and all related rights, claims, and causes of action, including claims that accrued prior to Completion, by express assignment from EOL.

### C. The Agreement's Acceptance and Rejection Provisions

19. Section 5.5.1 of the Agreement provides that EVL (now Par Health) may reject any shipment of API as defective if the API does not conform to the Specifications or if it fails to conform with any warranty set forth in the Agreement. Written notice of any such rejection (a "Rejection Notice") must be delivered to RK Pharma within (i) sixty (60) days after actual receipt of the API in the case of defects readily discoverable upon a Physical Inspection, or (ii) thirty (30) days after the date of discovery of any defect that was not obvious and could not be readily discovered through a Physical Inspection.

20. Section 5.5.3 of the Agreement provides that if any shipment of API is rejected pursuant to Section 5.5, the duty to pay any and all amounts payable to RK Pharma in respect of the rejected API shall be suspended until the earlier of (i) the RK Parties' delivery of a replacement shipment of the rejected portion of the API shipment, at the RK Parties' cost, and (ii) a determination by an independent laboratory or consultant in support of the Objection Notice in accordance with Section 5.5.2.

21. Section 5.5.4 of the Agreement provides that if a shipment or partial shipment is rejected by Par Health (as EVL's successor in interest) pursuant to Section 5.5, and if RK Pharma either agrees with the rejection or if such shipment or partial shipment is found to be defective by an independent laboratory or consultant, Par Health shall have no obligation to pay either of the RK Parties for such rejected API and, to the extent Par Health has already paid, the RK Parties shall, at Par Health's election, within ninety (90) days from the rejection date, either provide replacement API or credit or reimburse the amount of the original invoice in respect of the rejected API.

**D. RK Pharma's Warranties**

22. Under Section 7.1.1 of the Agreement, the RK Parties represented, warranted, and covenanted that all API manufactured, stored, handled, supplied, and delivered to Par Health (as EVL's successor in interest) shall (i) conform to the Specifications through the remaining shelf life of the API, the applicable Product Regulatory Filing, the Apicore DMF, cGMP, all applicable compendial specifications, and all Applicable Laws relating to the API, and (ii) be manufactured, packaged, tested, stored, and handled in accordance with the then-current version of the applicable Product Regulatory Filing.

**E. RK Pharma's Breach of the Agreement**

23. Par Health submitted Purchase Order 4500054569 to RK Pharma for the supply of Ferric Citrate API, and paid the sum of US$461,442.58 as consideration therefor.

24. The API delivered by the RK Parties under Purchase Order 4500054569 was defective and failed to conform to the Specifications and/or breached one or more warranties set forth in the Agreement. In particular, the delivered validation batches exhibited out-of-specification ("OOS") results for particle size distribution and impurity profile, including an unspecified impurity that Apicore subsequently identified as methyl citrate.

25. In accordance with Section 5.5.1 of the Agreement, Par Health rejected the defective API and communicated its rejection to RK Pharma and Apicore in writing. The following chronology of communications documents Par Health's rejection and the RK Parties' admissions:

26. On February 28, 2025, Par Health's predecessor notified Apicore in writing that at least one of the validation batches was out of specification, including failures in particle size distribution and impurity profile, and requested raw data and investigation reports.

27. On March 10, 2025, Par Health's predecessor communicated that it was awaiting particle size distribution method validation data and timelines for method review and revision.

28. On March 18, 2025, Par Health's predecessor documented that Apicore had decided to revise the related substances method and that, based on correct calculations, the unspecified impurity results in the highlighted lots "would be More Than 0.05%" (Specification: NMT 0.05%). Apicore did not dispute that the provided batches were OOS.

29. On March 19, 2025, Par Health's predecessor reiterated to Apicore and RK Pharma that the validation batches were OOS and requested a substantial response. Apicore did not dispute this assertion.

30. On March 23, 2025, Apicore submitted a justification report that Par Health's predecessor deemed inadequate because it failed to remedy the impurity and OOS issues and addressed only the third validation batch without resolving the underlying nonconformity across the validation lots.

31. On April 30, 2025, the parties' contemporaneous meeting minutes reflect that: (a) "Apicore confirmed that 3rd batch API is exceeding . . . [the] unknown impurity specification of 0.05% in stability;" (b) Apicore identified the impurity as methyl citrate, a process impurity; (c) "Apicore confirmed that they have CAPA in place to control this impurity in future batches below 0.05%;" (d) "[r]eprocessing of the 3rd batch is not possible;" and (e) Par Health's predecessor requested that Apicore produce three fresh validation batches.

32. On May 5, 2025, Par Health's predecessor memorialized that "Apicore is not agreeing to manufacture fresh 3 batches" and that Apicore proposed instead to "manufacture 4th batch and consider that as validation batch 3 as current batch 3 . . . is not complying to impurity

specs." Apicore represented that "[n]o change in specs is proposed and it will comply to current specs."

33. As of May 9, 2025, the manufacturing of the proposed replacement batch remained unresolved. Apicore projected a timeline of eight to ten months to produce three fresh validation batches and four months for a single batch.

34. On or about September 29, 2025, additional leachable impurities (dibutyl phthalate and diisobutyl phthalate) were identified in the validation batches. Par Health's predecessor stated that "current API validation batches may not be acceptable" against applicable limits and reiterated its request that "Apicore . . . manufacture 3 fresh validation batches with all CAPA implemented."

35. On November 4, 2025, Par Health's commercial lead notified Apicore that "the validation POs are significantly overdue and the market assumptions are changing" and that "[w]e anticipate competition by the time we launch now, which is bringing the commercial viability of the program into question."

36. The RK Parties did not dispute Par Health's rejection of the defective API. To the contrary, Apicore's own communications confirmed that the third validation batch exceeded the 0.05% unknown impurity specification limit, that reprocessing was not possible, and that a CAPA was required to control the impurity in future batches. These repeated written admissions constitute agreement with Par Health's rejection within the meaning of Section 5.5.4 of the Agreement. Accordingly, the precondition for reimbursement under Section 5.5.4 of the Agreement has been satisfied.

37. On November 21, 2025, Par Health sent a written demand to RK Pharma (attached as **Exhibit 2**), demanding cancellation of Purchase Order 4500054569 and repayment

of US$461,442.58, the amount previously paid as consideration for the rejected API, in accordance with Sections 5.5.1, 5.5.3, and 5.5.4 of the Agreement.

38. In the same letter, and pursuant to Section 13.2.6 of the Agreement, Par Health provided notice of termination of the Agreement, effective ninety (90) days from November 21, 2025. Par Health determined, in its sole discretion, that the Product is not commercially viable, which determination entitles Par Health to terminate the Agreement upon ninety (90) days' written notice under Section 13.2.6. In the alternative, Par Health was entitled to terminate under Section 5.6.1(iii) of the Agreement because the properly rejected API was not replaced within ninety (90) days after the rejection.

39. To date, RK Pharma has not refunded the US$461,442.58 and has not provided replacement API or otherwise credited the amount owed.

40. RK Pharma's failure to reimburse or credit Par Health for the rejected API within ninety (90) days from the rejection date, as required by Section 5.5.4 of the Agreement, constitutes a breach of the Agreement.

41. Par Health has suffered damages as a result of RK Pharma's breaches, including at least US$461,442.58, plus prejudgment interest and other consequential damages permitted by law.

## CLAIMS FOR RELIEF

### Count I
### (Breach of Contract)

42. Par Health incorporates the foregoing paragraphs as if fully set forth herein.

43. The Agreement is a valid and enforceable contract. Par Health fully performed or was excused from performing its obligations under the Agreement.

44. RK Pharma breached the Agreement by delivering API under Purchase Order 4500054569 that did not conform to the Specifications and/or failed to conform with one or more warranties set forth in the Agreement, in violation of Sections 5.5 and 7.1 of the Agreement. The delivered validation batches were OOS for particle size distribution and impurity profile, including an unspecified impurity identified by Apicore as methyl citrate that exceeded the 0.05% unknown impurity specification limit.

45. RK Pharma further breached the Agreement by failing to reimburse or credit Par Health in the amount of US$461,442.58 for the rejected API within ninety (90) days from the rejection date, as required by Section 5.5.4 of the Agreement.

46. As a direct and proximate result of RK Pharma's breaches, Par Health has suffered damages in an amount to be proven at trial, including at least US$461,442.58, plus prejudgment interest under New York law and costs.

**Count II**
**(Declaratory Judgment)**

47. Par Health incorporates the foregoing paragraphs as if fully set forth herein.

48. An actual, present controversy exists between the parties as to their rights and obligations under the Agreement, including the propriety of Par Health's rejection of the API under Section 5.5, RK Pharma's obligation to reimburse Par Health under Section 5.5.4, and the validity of Par Health's termination of the Agreement under Section 13.2.6 and, in the alternative, Section 5.6.1(iii).

49. Par Health seeks a judicial declaration that:

a. Par Health properly rejected the API delivered under Purchase Order 4500054569 pursuant to Section 5.5.1 of the Agreement;

b. RK Pharma is obligated to reimburse Par Health in the amount of US$461,442.58 pursuant to Section 5.5.4 of the Agreement; and

c. Par Health properly terminated the Agreement pursuant to Section 13.2.6 and, in the alternative, Section 5.6.1(iii) of the Agreement.

50. A declaratory judgment will clarify and settle the parties' legal relations and afford relief from the uncertainty and insecurity giving rise to this proceeding.

**Count III**
**(Unjust Enrichment)**

51. Par Health incorporates the foregoing paragraphs as if fully set forth herein.

52. If, for any reason, the Agreement is deemed unenforceable in whole or in part or does not govern the reimbursement obligation, then RK Pharma has been unjustly enriched at Par Health's expense by retaining US$461,442.58 in payment for defective API that, in equity and good conscience, should be returned to Par Health.

53. Par Health is entitled to restitution of US$461,442.58, plus prejudgment interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Par Health respectfully requests that the Court enter judgment in its favor and against RK Pharma as follows:

a. Awarding Par Health damages on Count I in an amount to be proven at trial, including at least US$461,442.58, plus prejudgment interest under New York law from the date the reimbursement became due, and costs as permitted by law;

b. Declaring, on Count II, that (a) Par Health properly rejected the API under Section 5.5.1 of the Agreement; (b) RK Pharma is obligated to reimburse Par Health in the amount of US$461,442.58 under Section 5.5.4 of the Agreement; and (c) Par Health properly terminated the Agreement pursuant to Section 13.2.6 and, in the alternative, Section 5.6.1(iii);

c. In the alternative to Count I, awarding Par Health restitution of US$461,442.58 for unjust enrichment on Count III, plus prejudgment interest;

d. Awarding Par Health its costs and disbursements of this action, and such attorneys' fees as may be permitted by law; and

e. Granting such other and further relief as the Court deems just and proper.

Dated: June 2, 2026

Respectfully submitted,

ArentFox Schiff LLP
1301 Avenue of the Americas, Floor 42
New York, NY 10019-6040
Tel. 212.492.3283
Fax 212.484.3990
eric.roman@afslaw.com

By: ______________________________
Eric Roman (ER-7928)
*Counsel for Plaintiff*
*PH Health Limited*