# EXHIBIT 1 (b)

DocuSign Envelope ID: 380537DB-A104-4DB9-9D7D-FF8B93C35523

## ARTICLE 4.
## REGULATORY OBLIGATIONS

**4.1 DMF**. Apicore shall file the Apicore DMF with the FDA in accordance with the directions of the Steering Committee, and thereafter will update the Apicore DMF upon Endo's request. The Apicore DMF shall not be revised by either RK Party without Endo's prior written consent, which consent shall not be unreasonably withheld, conditioned or delayed. RK Pharma shall notify Endo in writing within three (3) days of its or Apicore's receipt of any Regulatory Authority correspondence relating to the Apicore DMF (and provide Endo with a copy of such correspondence and its response to the Regulatory Authority). The RK Parties shall take all reasonable actions (including all applicable stability programs) to maintain and preserve the Apicore DMF.

**4.2 Specification Changes**. From time to time, Endo may make written requests to RK Pharma to voluntarily modify the Specifications based on technical, formulation development, regulatory or commercial considerations. RK Pharma shall, at its cost, cooperate with Endo and modify the Specifications as necessary to implement such voluntary modifications; provided that, if the modified Specifications require a process change, additional hardware or additional analyses to be performed, then Endo and RK Pharma shall mutually agree on the cost allocation for such modifications. Notwithstanding anything herein to the contrary, in the event any Regulatory Authority requires the Specifications to be modified for any reason in order to obtain or maintain Regulatory Approval for the Product, upon written notice provided by Endo to RK Pharma, the Specifications shall be modified accordingly and the RK Parties shall be responsible for all costs and expenses for such required modifications to the Specifications, including any modifications to the Apicore DMF.

**4.3 Product Regulatory Filings**. Endo or its Affiliate(s) shall be responsible for all communications with the Regulatory Authorities relating to all Product Regulatory Filings and any Regulatory Authority submissions or communications related thereto. In addition, Endo or its Affiliate(s) shall have sole control of and responsibility for preparing any patent certifications and related notice letters in connection with all Product Regulatory Filings and the prosecution and/or defense of any citizen's petition associated with all Product Regulatory Filings.

**4.4 Regulatory Authority Communications**. Upon Endo's request, the RK Parties shall cooperate in good faith in all communications to the Regulatory Authorities with respect to prosecution of the Product Regulatory Filings, including, but not limited to, making any changes or amendments to facilitate Regulatory Approval of the Product Regulatory Filing, and responding to any Regulatory Authority request relating to the Product, API, or facilities used in, or proposed for use in, the manufacture of the Product or the API.

## ARTICLE 5.
## FORECASTS, ORDERS, DELIVERY AND ACCEPTANCE

**5.1 General.**

5.1.1 Except as otherwise expressly provided for in this Agreement, Endo's purchases of API shall be made pursuant to firm purchase orders in writing that will specify

the amount of the API ordered, the delivery dates for such orders, and the delivery locations. For the avoidance of doubt, the Parties acknowledge and acknowledge and agree that purchase orders may be provided by any Affiliate of Endo, including, but not limited to, Par Formulations Private Limited.

5.1.2 The delivery date or dates of each purchase order may be specified in Endo's discretion, provided that the earliest date in any given purchase order shall not be less than (i) one hundred and twenty (120) days for quantities of ten (10) metric tonnes or less and (ii) one hundred and eighty (180) days for quantities of greater than ten (10) metric tonnes, in each case following the date of the purchase order.

5.1.3 Any terms and conditions of an invoice, purchase order, acknowledgement or similar document provided by Endo or the RK Parties to the other Party for the API that are inconsistent with the terms of this Agreement shall be null and void.

5.1.4 Upon becoming aware of any facts or circumstances that either RK Party reasonably expects to affect its ability to supply the quantity of API, which the RK Parties are required to supply hereunder, by the applicable requested delivery date, RK Pharma shall notify Endo in writing as promptly as possible thereafter (i) of such inability to timely supply the API, (ii) the underlying reasons for such inability and (iii) the indicative date when the RK Parties are expected to again be able to supply the API in accordance with the terms hereof. The RK Parties shall use best efforts to remedy any shortfall of API as soon as reasonably practicable. Following Endo's receipt of RK Pharma's notice of such inability to timely supply API hereunder, Endo may, upon five (5) days' prior written notice to RK Pharma, inspect the Facility pursuant to Section 8 of this Agreement and the RK Parties shall allow Endo to assist with, and consider in good faith all suggestions from Endo regarding, any remediation efforts.

**5.2 Forecasts.**

5.2.1 No later than one hundred and eighty (180) days prior to the scheduled or anticipated Commercial Launch of the Product, Endo shall provide RK Pharma with a good-faith, non-binding forecast of estimated quantities of the API for such Commercial Launch. From time to time during such one hundred eighty (180) day period, Endo may provide revised, non-binding forecasts of estimated quantities of the API for such Commercial Launch.

5.2.2 By the fifth (5th) business day of each Calendar Quarter (beginning with the first full Calendar Quarter after the first Commercial Launch), Endo shall provide RK Pharma with a good-faith, non-binding, rolling twelve (12) month forecast (or a forecast for the remainder of the Term, whichever is shorter) of Endo's anticipated orders of API.

**5.3 Purchase Orders.**

5.3.1 The RK Parties shall manufacture and deliver to Endo, by the requested delivery date, the amount of API that Endo has ordered pursuant to firm purchase orders. The quantities of API set forth in a purchase order submitted by Endo hereunder shall be in full batches and minimum packing configuration of API as set forth on Schedule 5.3.1.

RK Pharma shall accept in writing each purchase order within five (5) business days from the date of receipt, failing which, the purchase order shall be deemed to be accepted by the RK Parties. For the avoidance of doubt, the RK Parties may only reject a purchase order if the applicable purchase order includes terms and conditions that conflict with those contained in this Agreement.

5.3.2 Endo may cancel or modify a purchase order for any launch quantities of API by submitting a written change order to RK Pharma; provided that such written change order is received by RK Pharma at least ninety (90) days prior to the delivery date set forth in the purchase order.

**5.4 Shipment and Delivery.** Delivery of the API shall be (i) DDP (Incoterms 2020) to the Endo Designated Manufacturing Facility or Endo Designated Laboratory Facility for deliveries within India and (ii) EXW (Incoterms 2020) at the Facility for deliveries outside India, as requested in writing by Endo in the purchase order.

**5.5 Acceptance and Rejection of the API.**

5.5.1 Endo may reject any shipment of API as defective if the API does not conform to the Specifications or if it fails to conform with any warranty set forth in this Agreement. Endo shall deliver written notice of any such rejection (a "**Rejection Notice**") to RK Pharma within (i) sixty (60) days after actual receipt of the API at Endo Designated Manufacturing Facility or Endo Designated Laboratory Facility (as applicable), in the case of defects that are readily discoverable upon a Physical Inspection of a API shipment or (ii) thirty (30) days after the date of Endo's discovery of any defect that was not obvious and could not be readily discovered through a Physical Inspection. The foregoing shall not relieve the RK Parties from their indemnification obligations under Section 12.1. Any Rejection Notice shall state in reasonable detail the reason why Endo believes such API is defective. Endo shall, upon the request of RK Pharma, provide a sample of the API being rejected and copies of written reports relating to tests, studies or investigations performed to date by or on behalf of Endo on the API being rejected.

5.5.2 RK Pharma shall notify Endo in writing, within thirty (30) days of receipt by RK Pharma of the Rejection Notice whether RK Pharma agrees or disagrees with such Rejection Notice. RK Pharma's notice of disagreement therewith shall be deemed an "**Objection Notice**". If Endo and RK Pharma fail within ten (10) business days after delivery of the Objection Notice to agree as to whether the API identified in the Rejection Notice is defective, representative samples of the batch of API in question shall be submitted to a mutually acceptable qualified and reputable independent laboratory or consultant for analysis or review. The results of such evaluation shall be binding upon the Parties. The Party that is determined to have been incorrect in its determination of whether the API should be rejected shall assume the responsibility for, and pay, the costs of any such evaluation and promptly reimburse the other Party for any amounts paid by such other Party to the independent laboratory or consultant in connection with that determination.

5.5.3 If any shipment of API is rejected by Endo as per this Section 5.5, Endo's duty to pay any and all amounts payable to RK Pharma in respect of the rejected API shall

be suspended until the earlier of (i) the RK Parties' delivery of a replacement shipment of the rejected portion of the API shipment, at the RK Parties' cost, and (ii) a determination by the independent laboratory or consultant in support of the Objection Notice in accordance with Section 5.5.2. If only a portion of a shipment is rejected, Endo's duty to pay shall be suspended only as to the defective portion.

5.5.4 If a shipment or partial shipment is rejected by Endo pursuant to the provisions of this Section 5.5, and if RK Pharma either agrees with the rejection or if such shipment or partial shipment is found to be defective by an independent laboratory or consultant, Endo shall, at RK Pharma's request and expense, return to RK Pharma, or destroy and provide evidence of such destruction to RK Pharma of any such available rejected API. Endo shall have no obligation to pay either of the RK Parties for such rejected API and to the extent Endo has already paid, the RK Parties shall, at Endo's election, within ninety (90) days from the rejection date, either provide replacement API or credit or reimburse the amount of the original invoice in respect of the rejected API. In the event such rejection is agreed to by RK Pharma or confirmed by an independent laboratory or consultant, and Endo elects to have the API replaced, Endo shall be obligated to pay only for the replacement shipment of API supplied by the RK Parties.

5.5.5 If a shipment or partial shipment is rejected by Endo pursuant to the provisions of this Section 5.5, and if such a shipment or partial shipment is found to be without defect by an independent laboratory or consultant, Endo shall accept, and pay for, such shipment and any replacement shipments, if applicable.

5.5.6 During the pendency of any rejection discussions, upon Endo's request, the RK Parties shall as promptly as possible (but in any event within ninety (90) days) supply Endo with additional API that Endo shall purchase on the same terms as the API that is the subject of the rejection discussions (subject to reimbursement for any costs incurred by Endo, for testing by an independent laboratory or consultant in the event that such API is found to be defective by such independent laboratory or consultant).

**5.6 Supply Interruption; Customer Penalties; Supply Price Reduction**.

5.6.1 In the event that (i) deliveries of the API ordered by Endo under this Agreement are late in the aggregate by more than ninety (90) days in any one hundred eighty (180) day period, or (ii) delivery of the API ordered by Endo pursuant to a purchase order under this Agreement is late by more than ninety (90) days, or (iii) API is properly rejected under Section 5.5 and not replaced within ninety (90) days after delivery of the Rejection Notice by Endo or, if not confirmed by RK Pharma pursuant to an Objection Notice, within ninety (90) days after a laboratory analysis RK Pharma pursuant to Section 5.5.2 in Endo's favor, Endo shall have the right, at its sole option, (a) to withdraw any purchase orders previously submitted hereunder, and/or (b) to terminate this Agreement upon written notice to the other Party.

5.6.2 The RK Parties shall, jointly and severally indemnify and hold harmless Endo and its Affiliates from any "failure-to-supply" and/or re-procurement penalties that Endo or any of its Affiliates may incur from any customer purchasing Product from Endo

or its Affiliate to the extent such penalties are the result of the RK Parties' failure to supply API as required under this Agreement; provided that Endo shall maintain reasonable quantities of three (3) months' supply as safety stock.

5.6.3 In the event the RK Parties fail to deliver any shipment of API by the delivery date specified by Endo in a purchase order submitted in accordance with the terms of this Agreement, the Supply Price shall be reduced as set forth in Schedule 5.6.3 (attached hereto).

**5.7 Raw Materials**.

5.7.1 The RK Parties shall not switch suppliers of the Key Starting Materials during the development of the API or thereafter without Endo's prior written consent. In the event the RK Parties desire to switch suppliers, they shall give Endo one (1) year's prior written notice; provided that, in the event that a supplier ceases supplying the material or a change in suppliers is required to conform to the requirements of a Regulatory Authority, the Parties will promptly agree on a new supplier.

5.7.2 At all times during the Term of this Agreement, the RK Parties shall, at their sole cost and expense, maintain at least three (3) months' safety stock of the Raw Materials in quantities sufficient to manufacture API in accordance with Endo's most recently submitted forecast.

## ARTICLE 6.
## FINANCIAL PROVISIONS

**6.1 Pre-Signing Payment; Milestone Payment**.

6.1.1 In the event that any of the validation batches of API manufactured pursuant to a purchase order submitted by an Affiliate of Endo prior to the Effective Date (the "**Validation Batches**") do not conform the Specifications and the other representations and warranties set forth in Section 7.1, then the RK Parties shall promptly, so as not to delay Endo's filing of the Product Regulatory Filing, replace such API with conforming API for no additional charge.

6.1.2 Endo shall pay to RK Pharma One Million Three Hundred Thousand Dollars ($1,300,000) (the "**Milestone Payment**") upon the execution and delivery of this Agreement by all Parties.

**6.2 Payment of Milestones**. RK Pharma shall invoice Endo for the Milestone Payment following signing of this Agreement, and Endo shall pay the Milestone Payment as soon as reasonably practicable on receipt of the applicable invoice. The Milestone Payment shall be subject to a refund if this Agreement is terminated pursuant to Section 13.2.7.

**6.3 Supply Price**.

6.3.1 Endo shall pay to RK Pharma for supply of the API in an amount equal to the Supply Price. RK Pharma shall invoice Endo for the Supply Price no earlier than the

date the API is dispatched. For the purposes of this Agreement, the "**Supply Price**" means the total unit price to be paid by Endo to RK Pharma for the supply of the API, which shall be based on the amount of API ordered per calendar year and not exceed the amounts set forth in the table below; provided that the Supply Price will be invoiced and paid in Indian rupees at the dollar/rupee exchange rate in effect at the time of invoicing as published by the Reserve Bank of India (or such other conversion rate as may be agreed by the Parties). Once Endo's orders for a calendar year exceed one of the thresholds set forth in the table below, RK Pharma shall begin to invoice for the lower Supply Price. If at the end of a calendar year the aggregate amount of Supply Price paid by Endo exceeds the aggregate Supply Price Endo should have paid based on its aggregate orders for such calendar year, then, at Endo's option, either Endo shall receive a credit toward future API orders or RK Pharma shall refund Endo the difference within sixty (60) days of such year end.

| **Quantities of API Ordered Per Calendar Year** | **Supply Price** |
|---|---|
| Less than 10 metric tonnes | $750 per kg |
| Greater than or equal to 10 metric tonnes, but less than 20 metric tonnes | $650 per kg |
| Greater than or equal to 20 metric tonnes | $550 per kg |

6.3.2 The Supply Price shall initially be the amounts set forth in the table in Section 6.3.1. In the event of the launch or pending launch in the Territory of a competing product to the Product, the Parties shall negotiate appropriate reductions to the Supply Prices set forth in Section 6.3.1 such that the Product remains commercially viable.

6.3.3 Endo shall pay RK Pharma the Supply Price for amounts of API delivered by the RK Parties to Endo in accordance with Section 5.4 within sixty (60) days from the date of Endo's receipt of invoice.

6.3.4 In the event that Endo receives a bona fide offer to purchase the API from a Third Party for a price that is lower than the Supply Price, Endo may provide written notice thereof to RK Pharma, and the RK Parties shall have the right to match the other offer within ten (10) business days. If the RK Parties do not elect to match such offer, Endo and its Affiliates shall be released from the purchase requirements of Section 3.2.2.

**6.4 Costs and Expenses**. Except as expressly provided in this Agreement, each Party shall bear its own costs and expenses incurred in the performance of its obligations hereunder without charge or expense to the other.

**6.5 Taxes**. Endo shall make all payments under this Agreement free and clear of all deductions and withholdings in respect of Taxes, unless any such deduction or withholding is required by law in effect at the time of payment. Any Tax required to be withheld on amounts payable under this Agreement by Endo to RK Pharma will be paid by Endo on behalf of RK